560 P.2d 934

**SKYHOOK CORPORATION, d/b/a Baldwin Ward Manufacturing Company, Inc., Petitioner,**

v.

**John JASPER, as administrator of the Estate of and personal representative of Malvin Mack Brown, Deceased, Respondent.**

**No. 10843.**

Supreme Court of New Mexico.

March 11, 1977.

Modrall, Sperling, Roehl, Harris & Sisk, Peter J. Adang, Albuquerque, for petitioner.

William H. Carpenter, Albuquerque, for respondent.

## OPINION

OMAN, Chief Justice.

This cause is before us on a writ of certiorari directed to the New Mexico Court of Appeals, which reversed a judgment entered by the district court in favor of defendant (Skyhook) upon a directed verdict. *Jasper v. Skyhook Corporation,* 89 N.M. 98, 547 P.2d 1140 (Ct.App.1976). We reverse the Court of Appeals and affirm the judgment of the district court.

This is an action for claimed wrongful death brought by plaintiff (Jasper), as administrator of the estate and personal representative of Malvin Mack Brown, deceased, pursuant to §§ 22–20–1 & 3, N.M.

S.A. 1953. Decedent was employed by Electrical Products Signs, Inc. (Signs, Inc.) as an apprentice sign installer. On January 11, 1973, he was assisting a journeyman installer of signs (Pulis), also employed by Signs, Inc., to install a Phillips 66 sign at a service station near Springer, New Mexico.

A hole had been dug in the ground in which to place the heavy signpost, a metal pipe, in an upright position. Pulis and decedent were using a 100 foot telescoping crane rig to lift and place the signpost in the hole. This crane was manufactured by Skyhook and sold by it to Signs, Inc., in January 1968. A clearly visible written warning appeared on the boom. In this warning it was stated: "All equipment shall be so positioned, equipped or protected so no part shall be capable of coming within ten feet of high voltage lines."

Pulis was aware of and had read the warning, and the evidence is to the effect that decedent also had seen and was aware of the warning, since it was clearly visible and decedent had previously worked on and had operated the rig. Both Pulis and decedent knew of the presence of overhead high voltage lines, since they had been warned of the presence of these lines by the operator of the Phillips 66 station at which the sign was being installed. The station operator had warned them that they should operate the equipment ten feet from these high voltage lines.

Pulis and decedent positioned the crane so that, in the judgment of Pulis, the crane was ten or twelve feet from the power lines. However, no measurements were made to assure that the positioned distance of the crane from the power lines was sufficient to prevent any portion of the equipment from coming within ten feet of these lines, even though a tape measure was kept in the cab of the rig for the purpose of making these measurements. Pulis then hoisted the signpost with the crane and began swinging it toward the hole in which it was to be positioned. As he was swinging the signpost toward the hole, he heard decedent scream. . Decedent, who was guiding the signpost by hand toward the hole, was electrocuted when the lift cable came in contact with the overhead power line. A "tag line" or "guide rope," which was not an effective conductor of electricity and which decedent could have used to guide the signpost to the hole, was available, but was not ordinarily used by the helper in setting a post. There were also other measures commonly known, and known at least to Pulis, which could have been taken to avert the electrocution of decedent.

Decedent had been warned by his father of the dangers in operating a crane too near high voltage lines. The rig had been used by Signs, Inc. for the purpose of erecting signs for a period of five years, and no such accident or incident had ever previously occurred.

Plaintiff sought recovery from Skyhook on the theory of strict tort liability for failing to equip its crane, at the time of its sale to Signs, Inc. in January 1968, with either an "insulated link" or a "proximity warning device." An insulated link is a device installed on a crane to isolate the lifting hook from the lifting line or cable, so that there is no electrical continuity between the crane boom or lifting cable and the load being lifted. In January 1968, no crane manufacturer installed insulated links as standard equipment, but they were available to a purchaser of a crane at an additional cost of $300 to $400, depending on the size of the link.

A proximity warning device is an alarm warning system activated by the electrostatic field of overhead power lines. The use of this device requires that the crane be positioned at the minimum distance desired from the power line and the device then set for operation. If properly set, it will warn the operator by sound and lights when the equipment encroaches on the minimum preset distance from the power line. At the time of the sale of the crane to Signs, Inc., no crane manufacturer offered this device as either standard or optional equipment, but it could be purchased for approximately $700.

In reversing the judgment of the district court entered pursuant to a directed ver-

dict, the Court of Appeals considered only the "facts (evidence) most favorable to plaintiff." *Jasper v. Skyhook Corporation, supra.* The standards to be followed by the trial court in ruling on a motion for a directed verdict, and the scope of review of the evidence on appeal from a judgment entered upon a directed verdict, are set forth in *Archuleta v. Pina,* 86 N.M. 94, 95, 519 P.2d 1175, 1176 (1974), wherein it is stated:

"In ruling on a motion for a directed verdict, the trial court must view the evidence, together with all reasonable inferences deducible therefrom, in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. (Citations omitted.) " * * *.

"The appellate court, upon reviewing a judgment entered pursuant to a directed verdict, must also view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. (Citations omitted.)"

Neither the trial court in ruling upon a motion for a directed verdict, nor an appellate court in reviewing the evidence on appeal from a judgment entered pursuant to a directed verdict, is authorized to consider only the evidence most favorable to the party opposing the motion. All the evidence must be reviewed, but, if there be conflicts or contradictions in the evidence, these conflicts must be resolved in favor of the party resisting the motion. Insofar as the properly admitted evidence is uncontroverted, it must be considered. However, if any uncontradicted evidence, including the reasonable inferences deducible therefrom, may reasonably be interpreted in different ways, then the interpretation most favorable to the resisting party must be accepted.

The pertinent facts of this case as set forth above are consistent with this scope of review.

In its opinion in this case, the Court of Appeals relied upon its opinion in *Deem v. Woodbine Manufacturing Company,* 89 N.M. 50, 546 P.2d 1207 (Ct.App.1976), for extending the concept of strict liability under Restatement (Second) of Torts § 402A (1965), hereafter cited as § 402A, to manufacturers of products who fail to equip their products with optional safety devices. However, by a unanimous decision of this court, the decision of the Court of Appeals in the *Deem* case was reversed, and its opinion disapproved with directions that it not be cited as precedent. *Woodbine Manufacturing Company v. Deem,* 89 N.M. 172, 548 P.2d 452; 89 N.M. 463, 553 P.2d 1270 (1976).

Since Skyhook was the seller, as well as the manufacturer of the crane involved in this case, we need only consider whether the evidence adduced at trial required the submission to the jury by the trial court of the issue of Skyhook's liability under § 402A. We have hereinabove recited the pertinent facts as established by the evidence. We need not and do not concern ourselves with the question of whether Skyhook, as the manufacturer of the crane, was responsible under Restatement (Second) of Torts § 398 (1965) for negligence in the plan or design of the crane because of its failure to supply the crane with either an insulated link or a proximity warning device. As stated above, plaintiff sought recovery under § 402A, and we have heretofore adopted as the law of New Mexico the concept of liability set forth therein. *Garrett v. Nissen Corporation,* 84 N.M. 16, 498 P.2d 1359 (1972); *Stang v. Hertz Corporation,* 83 N.M. 730, 497 P.2d 732 (1972).

Thus, the question to be resolved is whether the evidence created an issue of fact as to liability of Skyhook under § 402A, which should have been submitted to the jury. The pertinent portions of this section of the Restatement provide:

"*Special Liability of Seller of Product for Physical Harm to User or Consumer.*

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his

property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

There is no question about the sale of the rig by Skyhook to Signs, Inc; no question that Skyhook was engaged in the business of selling these rigs; no question that decedent was using the crane rig at the time of his death; and no question about any substantial change having been effected in the rig from the day of its sale to Signs, Inc. in January 1968 to January 11, 1973, the date of the unfortunate accident. Therefore the only issue under § 402A which must be determined is whether the crane was in a defective condition which made it unreasonably dangerous to the user.

■ First, we must decide whether the failure of a seller to include an optional safety device as a part of the product may be considered as a sale of the product in a "defective condition." It would serve no useful purpose to try to reconcile the authorities on this point. However, we are of the opinion that a failure to incorporate into a product a safety feature or device may constitute a defective condition of the product. Obviously, the test of whether or not such a failure constitutes a defect is whether the product, absent such feature or device, is unreasonably dangerous to the user or consumer or to his property.

If a condition of a product is unreasonably dangerous to a user or consumer or to his property, we see no reason why distinctions should be made as to the nature of the condition or defect. Although the Idaho Supreme Court was considering whether a distinction should be drawn between defective manufacture and defective design, the reasoning of that court is equally applicable to the liability of a seller under § 402A.

In *Rindlisbaker v. Wilson,* 95 Idaho 752, 759, 519 P.2d 421, 428 (1974), that court stated:

"Appellant urges that a distinction should be drawn between defective manufacture and defective design. However, we fail to see any logical reason to distinguish between the two. The risk to the user will be just as great with an *unreasonably dangerous* design defect as with a manufacturing defect." (Emphasis added.)

Applied to the case at hand, this raises the inquiry as to whether the crane rig was unreasonably dangerous. The fact that the accident did occur is not in itself sufficient, in the light of hindsight, to support a finding that the crane rig was unreasonably dangerous. Almost everything, if not everything, we use or consume can cause injury, or even death, if used excessively or improperly.

■ The crane rig had been used by Signs, Inc. for five years, had performed well, and no injury had resulted. Obviously, it was not unreasonably dangerous within the contemplation of the ordinary consumer or user of such a rig when used in the ordinary ways and for the ordinary purposes for which such a rig is used. See § 402A, comment i. Furthermore, even though Skyhook had knowledge that the rig might be used in areas where overhead high voltage lines were present, it placed on the boom a clearly visible written warning that "all equipment shall be so positioned, equipped or protected so that no part shall be capable of coming within ten feet of high voltage lines." There is no contention that this warning was inadequate, had it been heeded. Skyhook, as the seller, could reasonably assume that the warning would be read and heeded. And had it been heeded, the crane rig was not in a defective condition nor unreasonably dangerous. See § 402A, comment j.

■ The above reasons are sufficient in themselves to dispose of this case, but we have more here. Both Pulis and decedent had the presence of the high voltage lines called to their attention, both knew the dangers of high voltage electricity—as does every ordinary adult in this present day

society in New Mexico in which electricity is used so commonly for so many purposes—and together they positioned the crane rig away—but not far enough away—from these high voltage lines. There is no duty to warn of dangers actually known to the user of a product, regardless of whether the duty rests in negligence or on strict liability under § 402A. *Garrett v. Nissen Corporation,* supra.

█ Since there was no defect in the crane rig unreasonably dangerous to the decedent within the contemplation of the strict liability concept enunciated in § 402A, there was no culpable conduct on the part of Skyhook which could have proximately caused the accident and the resulting death. However, it is the obligation of a claimant under § 402A, in order to recover, to prove that a defective condition unreasonably dangerous proximately caused the physical harm to the user or consumer, or to his property. *Bradford v. Bendix-Westinghouse Auto. Air Brake Co.,* 33 Colo.App. 99, 517 P.2d 406 (1973); *Wenzell v. MTD Products, Inc.,* 32 Ill.App.3d 279, 336 N.E.2d 125 (1975); *Wilcheck v. Doonan Truck & Equipment, Inc.,* 220 Kan. 230, 552 P.2d 938 (1976); *Southwire Co. v. Beloit Eastern Corp.,* 370 F.Supp. 842 (E.D.Pa.1974).

In a case with a factual situation surprisingly similar to that in the present case and in which the § 402A claim of strict liability was predicated upon the absence of the same type of safety devices as those involved in the present claim, the Supreme Court of Minnesota, in its opinion holding as a matter of law that the defendant there involved was not liable under either strict liability or negligence, stated:

> "Here the manufacturer warned against using the product within 6 feet of any power lines. [This warning was contained in the Operator's Instruction Manual, whereas in the present case it was placed in a clearly visible position on the crane boom.] Additionally, Barton, the employer, and plaintiff, its employee, knew of the danger involved.
>
> "We hold that American Hoist did not owe the injured plaintiff any duty to install safety devices on its crane to guard against the risk of electrocution when the record demonstrated that risk was: (1) Obvious; (2) known by all of the employees involved; and (3) specifically warned against in American Hoist's operations manual. * * * "

*Halvorson v. American Hoist & Derrick Co.,* Minn., 240 N.W.2d 303, 308 (1976).

As stated above, we take the same position in the present case as that taken by the Minnesota court in the *Halvorsen* case. Since we hold that there was no defective condition in the crane rig which was unreasonably dangerous to the decedent as a user thereof, we need not and do not consider the other issues raised in the appeal or in the petition for writ of certiorari.

The decision of the Court of Appeals is reversed and this cause is remanded to that court with directions to affirm the judgment of the district court.

IT IS SO ORDERED.

McMANUS, SOSA, EASLEY and PAYNE, JJ., concur.