William FABIAN, Plaintiff-Appellee,

v.

E. W. BLISS COMPANY, a subsidiary of Gulf and Western Industries, Inc., Defendant-Appellant.

No. 77–1046.

United States Court of Appeals, Tenth Circuit.

Submitted May 9, 1978.

Decided Sept. 8, 1978.

Richard E. Ransom of Smith, Ransom & Gilstrap, Albuquerque, N.M. (William H. Carpenter, Albuquerque, N.M., on brief), for plaintiff-appellee.

Mary C. Walters, Albuquerque, N.M. (Irving E. Moore, Albuquerque, N.M., on brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is a diversity case involving personal injury, brought by plaintiff William Fabian (Fabian) against defendant E. W. Bliss Company (Bliss). A jury returned a verdict for Fabian in the amount of $80,000, from which Bliss now appeals. (A directed verdict was granted in favor of another defendant, Scovil Fluid Power, which is not involved in this appeal.)

The issues in this Court primarily concern the trial court's instructions to the jury. Bliss argues that the instructions were confusing, incomplete and inconsistent, incorrectly stated the applicable law, and failed to distinguish between negligence and strict liability theories of recovery.

Bliss' second ground for appeal is that the trial judge should have given it a directed verdict at the close of the plaintiff's case, judgment notwithstanding the verdict, or a new trial.

While an employee of Sandia Industries, Inc., William Fabian suffered injuries when his hand was caught in a power press in March 1973. Testimony at trial indicated that Bliss had originally sold the Model 23 power press to Westinghouse in 1951. Barrier guards were not attached at the time the press was sold to Westinghouse, but would have been available upon special order. Testimony at trial established that at the time the press was manufactured, no others manufacturers of power presses were routinely equipping this type of press with barrier guards. Such guards are a safety device and would prevent the press operator's hands from being in the die area at the time the press is in cycle.

From 1954, when Westinghouse last requested information from Bliss concerning the press, until 1972, when Sandia Industries requested a parts manual from Bliss, the whereabouts of the press was unknown to Bliss. Evidence at trial established that the press was in government storage for a number of years before delivery to Sandia Industries. At some point prior to installation at Sandia, the press had been converted from the original foot treadle to a two-hand control press. This conversion is not uncommon, but does result in more wear on the clutch and latch mechanisms of the press, which lock the press in an up position following each revolution. The latch on the press involved in this litigation had to be replaced 15 months after the incident involving this litigation.

In 1971, industry minimum safety standards were altered to require all presses installed from that time on to have point-of-operation guards provided by the owner. This changed the 1949 standards under which the Model 23 was manufactured, which had not defined who should be responsible for safety devices. The Model 23 here in question was covered by these upgraded requirements for safety devices.

In light of the 1971 upgrade in industry standards, Bliss undertook to mail a pamphlet entitled "B–11.1 As We See It" to notify all then-known press owners of their responsibilities to install safety devices. Bliss was aware, as early as 1968, that there was an additional wear factor on presses converted to a two-hand control. The B–11.1 pamphlet, therefore, advised against using the two-hand clutch devices. However, because presses are often resold by original owners, Bliss was unable to contact all owners.

Prior to 1971, Bliss routinely discussed safety precautions with press buyers. In 1967 Bliss also started giving buyers a pamphlet entitled "Safety Precautions and Suggestions." Records introduced at trial, however, did not indicate that any "Safety" manual or B–11.1 pamphlet was ever sent to Sandia.

The precise type of malfunction, if any, of the press which resulted in the injury to Fabian, was not established conclusively. The evidence tended to indicate that the press double-punched, and Fabian's hand was caught in the press during the second revolution. The press had, since installation at Sandia, double-punched and gone into continuous cycle. Because the Model 23 is a full revolution press, meaning it completes one revolution with each activation of the control mechanism, a double-punch would mean that it made two complete revolutions with a single activation. Continuous cycling is a series of revolutions following a single activation of the press. Both incidents were reported to the proper personnel at Sandia and inspected; Fabian was informed that any problems with the press had been corrected.

Sandia Industries personnel had devised an extrication hook which was intended to be a safety device in that a press operator would not have his hands in as dangerous a position. Such hooks are not a recognized safety device within the industry. The hook aided the placement and removal of materials from the press, but was not always in use nor always available for use by employees. Fabian testified the hook was not available to him on the day he was injured.

Fabian asserted two theories of liability at the trial below. First, he alleged that Bliss was negligent in failing to design the press without adequate safety controls, in failing to adequately warn of risks of injury and specific wear on the clutch and latch due to alterations in the machine, and in failing to give adequate directions for the use of barrier guards. Second, Fabian alleged that Bliss was strictly liable in tort, under a products liability theory, for marketing a defective press which presented an unreasonable risk of harm to users.

Under the negligence theory a plaintiff must prove that a duty is owed by the defendant to the plaintiff, that the defendant breached that duty, and that the breach caused the injuries to the plaintiff. Under the strict liability theory a plaintiff must prove that a defect in fact existed in the product, that a causal relationship existed between the injury suffered and the defective condition, and that there were no substantial changes in the condition after the product was sold. Restatement (Second) of Torts, § 402A (1965). New Mexico law controls here, and it has adopted the Restatement position on both theories. *See, e. g., Garrett v. Nissen Corp.,* 84 N.M. 16, 498 P.2d 1359 (1972); *Skyhook Corp. v. Jasper,* 90 N.M. 143, 560 P.2d 934 (1977).

In order to preserve review of alleged error, a party must make an objection at trial which states both the matter to which objection is made and the grounds for the objection. In civil cases only rarely will we review error when a specific objection was not made at trial. *Prebble v. Broderick,* 535 F.2d 605 (10th Cir. 1976); Fed.R.Civ.P. 51.

### I

The various objections made by Bliss at trial may be grouped into several categories: 1) those relating to the proper tests to be applied to determine whether a design defect exists and when liability attaches; 2) instructions dealing with a manufacturer's duty to warn of dangers related to its product; and 3) those instructions which allegedly prejudiced defenses to liability. In addition, certain issues were raised initially upon appeal.

### A

The first group of objections relate to the tests to be applied to determine negligence and strict liability for product design. As stated, New Mexico has adopted the Restatement of Torts position as to

negligence and strict liability. *Garrett v. Nissen Corp., supra; Villanueva v. Nowlin,* 77 N.M. 174, 420 P.2d 764 (1966). Sections 395 and 398 of the Restatement require a manufacturer to use reasonable care in the fabrication of a product, and reasonable care to adopt a safe plan or design for a product. Section 402A states the rule as to strict product liability for marketing a product in a defective condition which is unreasonably dangerous. Bliss would have the jury consider that design liability is determined in light of whether "the product was reasonably suited for the purpose for which it was intended, in accordance with the generally accepted standards of the industry, having due regard for the existent state of technology at the time the product was designed and made and the inherent nature of the work to be performed by the product." Instructions actually given dealt with whether a product was suited for the purpose for which it was intended.

The proper rule is that industry standards are not conclusive as to ordinary care in design, but rather are admissible evidence. *Lopez v. Heesen,* 69 N.M. 206, 365 P.2d 448 (1961). *See also, Texas & Pacific Ry. Co. v. Behymer,* 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905 (1903). The portions of Bliss' offered instruction dealing with the state of technology and inherent nature of the work are not supported in New Mexico law. These are not factors listed as part of the Restatement approach to determining design liability, though they may be factual issues relating to the question of a manufacturer's reasonable care in design.

■ Bliss also objected to the court's refusal to use suggested instructions for determining the reasonableness of a design. It urged that the criteria be applied which are stated in certain cases, most plainly in *Ward v. Hobart Mfg. Co.,* 450 F.2d 1176 (5th Cir. 1971) (applying Mississippi law). One test of those cases is the conformity to practices of other manufacturers in the industry discussed above. The other criteria are the open nature of the danger, extent the injured party's use caused the injury, and the length of time the product was

used without injury. These factors may be evidence of foreseeability and reasonableness of the design, but they are not principles incorporated into the Restatement approach adopted by New Mexico.

■ Bliss alleges error in the court's refusal to instruct that a design is not negligent if it is reasonably safe, though it could be safer. The instructions given indicated that a product need not represent the ultimate in safety, which is substantively equivalent to appellant's request.

■ Bliss makes a final objection that the court refused to instruct the jury that a product is properly designed if there are no latent or concealed dangers. This position is contrary to Restatement sections 395 and 398 which indicate that a manufacturer must use reasonable care in making a product, and that use of a design which makes the product dangerous subjects the manufacturer to liability to foreseeable users.

■ The appellant relies on *Woodbine Mfg. Co. v. Deem,* 89 N.M. 172, 548 P.2d 452 (1976) which refused to extend strict products liability to optional safety devices. That opinion is recognized in a later case, *Skyhook Corp. v. Jasper,* 90 N.M. 143, 560 P.2d 934 (1977), where the court goes on to say that lack of optional safety devices may still be a defective condition. Thus, the question of liability for failure to incorporate safety devices is properly part of a strict liability claim.

In summary, we hold that the instructions given fairly informed the jury of a manufacturer's duty to use reasonable care in the design of a product, and of the strict liability guidelines to be applied in a products liability case. The jury could have found that the unreasonably dangerous condition resulted from a defect in the press itself, or from the lack of adequate warnings from Bliss. The trial court did not specifically utilize the Restatement language, but the instructions were phrased in accordance with the applicable principles of law.

## B

A second group of objections made by Bliss concern a manufacturer's duty to warn of risks of injury. It objected to a court instruction that a manufacturer must use ordinary care in the design of a product, even if the danger that it presents is open and obvious. Bliss also complains that the court would not instruct that the absence of a safety device constituted an obvious condition of the press and therefore imposed no duty to warn users of the risk. It argues that the instruction given by the court imposing upon the manufacturer a continuing duty to warn in effect requires the production of an accident-free press. A related objection was that a false issue was introduced into the case by the court instruction that a manufacturer must use ordinary care to avoid risks against which he can expect the user to fail to protect himself. The trial court did instruct the jury that there is no duty to warn of an open and obvious danger, and that the product need not represent the ultimate in safety.

The gist of all of Bliss' objections in this category seem based upon the contention that the dangers of the press were obvious; the absence of a safety guard was obvious. Thus they were known dangers, and in the words of *Garrett v. Nissen,* 84 N.M. 16, 498 P.2d 1359, 1364 (1972),

> There is no duty to warn of dangers actually known to the user of a product, regardless of whether the duty rests in negligence under § 388 Restatement . . or on strict tort liability under § 402A
> . . . .

*See also, Skyhook Corp. v. Jasper,* 90 N.M. 143, 560 P.2d 934 (1977).

In *Garrett,* involving an injury from a trampoline accident, the parties conceded that the product was not defective and that the plaintiff was knowledgeable and experienced in the use of the trampoline. In *Skyhook* the accident occurred when a crane came into contact with a power line. The only defect alleged in the crane was that it should have been manufactured with an "insulated link" to prevent electrical current from passing between the boom and

the load or a "proximity warning device" to sound an alarm when the crane was positioned near an electrical current. In finding that a directed verdict for the defendant was proper the court relied upon the fact that the boom of the crane contained a clearly visible written warning, "All equipment shall be so positioned, equipped or protected so no part shall be capable of coming within ten feet of high voltage lines."

In *Garrett* and *Skyhook* we think the perimeters of the dangers were indeed known, or should have been known, to the plaintiff. But is the same true in the instant case? Were the dangers fully known from the fact the machine had no guard and had double-punched at least once before?

The Restatement (Second) of Torts § 388, Comment k (1965) in discussing when warning of defects is unnecessary, states:

> However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous. In such case, if the supplier, having such special experience, knows that the condition involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, he is required to inform them of the risks of which he himself knows and which he has no reason to suppose that they will realize.

In Comment n of that same section, speaking of how much burden is to be imposed upon the supplier, it says:

> Since the care which must be taken always increases with the danger involved, it may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them and those in the vicinity of their use, to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character.

In the area of drug labeling, the New Mexico courts have held that a warning on

such a product must be "adequate" or "reasonable" and it is an issue of fact for the jury. *E. g., Michael v. Warner/Chilcott,* N.M.App., 579 P.2d 183, *cert. denied,* (1978). *See also, First Nat'l Bank in Albuquerque v. Nor-Am Agr. Prod., Inc.,* 88 N.M. 74, 537 P.2d 682 (Ct.App.), *cert. denied,* 88 N.M. 28, 536 P.2d 1085 (1975). We believe New Mexico courts would apply the same principle to test whether this plaintiff had such knowledge of the risks as to obviate the duty to warn in the case before us.

Several facts contribute to making us hold the trial judge was correct in submitting the issue to the jury upon the instructions he gave, and in denying the instructions requested by defendant. The machine was obviously a dangerous one, where the risk of injury during operation was great. This is supported by the fact that at the time of the injury industry standards required point-of-operation guards on this model, and Bliss had undertaken to notify owners of its presses of the requirement by pamphlet and discussions. It was also known to Bliss that there was an additional wear factor when the two-hand clutch control device was added, as was done commonly, and its pamphlet advised against such a conversion. Testimony at trial to the effect that two-hand controls were considered by Sandia to be safety devices (because both hands were necessarily away from the die area) itself established a factual question as to the obviousness of the danger to the user Fabian.

Testimony at the trial also indicated that the latch which prevented double-punching would occasionally lose the race if there was excessive friction in the mechanism, too much lubricant, or accumulated hardened lubricant and dirt, as was known to Bliss before 1951. While the machine had double-punched at least once to the knowledge of Fabian, he had been *informed* it had been fixed. We think that whether he had full knowledge of the likelihood of it double-punching again, combined with the tes-

timony as to defendant Bliss' knowledge of this propensity, created a question for the jury.

## C

Bliss' third group of objections pertain to deprivation of defenses. As to the defense of assumption of the risk, instructions stated that a "product may present an unreasonable risk of injury even though the risk is obvious or may be known to the user." This statement is substantively no different from the proposition that a manufacturer has a duty to use reasonable care in the design of a product, and that duty is not changed because any risk from use of the product might be obvious. The instruction does not negate a viable defense of contributory negligence.[1]

The same reasoning is applicable to Bliss' objection to the instruction that a "manufacturer must use ordinary care to design the product to avoid the risk if the manufacturer could reasonably expect the user to fail to protect himself or others despite awareness of the danger."

Bliss' final objections in the area of defenses concerned the instruction that plaintiff's failure to use ordinary care is not a defense to strict liability. In *Bendorf v. Volkswagenwerk Aktiengeselshaft,* 88 N.M. 355, 540 P.2d 835 (Ct.App.), *cert. denied,* 88 N.M. 319, 540 P.2d 249 (1975), the various defenses to strict products liability under Restatement § 402A were discussed. The court held that unreasonable encounter of a known danger bars recovery. That instruction was given to the jury. We find no inconsistency, as argued by Bliss, in the requirement that any deviation from ordinary care by Bliss must be the proximate cause of injuries, and that a plaintiff's failure to use ordinary care on his own behalf is not a defense to strict liability claims.

## D

Bliss raises certain alleged errors in the instructions for the first time on appeal.

---

1. New Mexico no longer recognizes assumption of the risk as a separate defense, but treats it as a part of the contributory negligence con-

cept. *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1972).

In the event of "plain error" only can these objections constitute grounds for reversal. *Prebble v. Broderick,* 535 F.2d 605 (10th Cir. 1976).

 Bliss argues that the instructions were both confusing and incomplete. However, the appellant presents no evidence that the jurors requested additional explanation, or that they were confused. The alleged incompleteness stems primarily from the failure to establish a link between duty and liability. The instructions given did point out that a breach of duty must be found to be the proximate cause of injury. Bliss also raises the issue of a confusion between negligence and strict liability. While we note that the elements of each theory might have been more clearly defined, all of the elements and recognized defenses did appear in the instruction given to the jury.

We find no "plain error" in the instructions.

## II

Bliss' second ground for appeal concerns the trial court's refusal to grant either a directed verdict, judgment notwithstanding the verdict, or a new trial. These contentions appear to be based upon its allegations treated in the opinion above: that no reasonable jury could have found for plaintiff Fabian, when the press met industry standards at the time of its sale, the absence of a guard was obvious and the ' dangers known to the plaintiff. It is, of course, a difficult case, but the evidence presented at trial disclosed factual issues as to proximate cause and the reasonableness of the design of the press, which the trial judge properly left to the jury.

The judgment of the trial court is affirmed.