**Jessie E. MEIL, Plaintiff-Appellee,**

v.

**PIPER AIRCRAFT CORPORATION, Defendant-Appellant.**

No. 80–1477.

United States Court of Appeals,
Tenth Circuit.

Argued July 16, 1981.
Decided Sept. 11, 1981.

Gerald Anderson (Ira Watrous of Watrous, Joyce & Ryan, Houston, Tex., and Elizabeth E. Whitefield, Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

W. R. Logan, Albuquerque, N. M. (C. LeRoy Hansen, Civerolo, Hansen & Wolf, P. A., Albuquerque, N. M., with him on the briefs), for defendant-appellant.

Before LOGAN and BREITENSTEIN, Circuit Judges, and BROWN,* United States District Judge for the District of Kansas.

BREITENSTEIN, Circuit Judge.

This is a product liability case with jurisdiction based on diversity. The plaintiff was injured when the Piper plane, which he was piloting to spray crops, crashed in New Mexico after striking a steel cable static line. The case was tried on theories of both strict liability and negligence. Judgment of $840,000 was entered on a general jury verdict. The appeal is based on insufficiency of the evidence and alleged improper instructions. We affirm.

Crop spraying, or dusting, is the dissemination of chemicals from an airplane flying over fields at low altitudes. It is a dangerous occupation requiring routine precautions. Plaintiff-appellee alleged that defendant-appellant, Piper Aircraft Corp., negligently designed, manufactured, and assembled the aircraft which was unsafe to operate and was not crashworthy. On this appeal Piper does not challenge either the absence of a finding that plaintiff was contributorily negligent or that the proof of damage was insufficient.

The crash occurred on July 7, 1976, while plaintiff, an experienced agricultural pilot, was spraying parathion, a liquid insecticide, on cropland. The plane hit and broke a steel static cable which connected poles supporting electrical transmission lines. The contact point between the plane and the cable was a cutter blade attached to a landing gear strut of the plane. The purpose of the cutter blade was to cut wires which might be struck in flight. The cable was broken rather than cut.

---

* Honorable Wesley E. Brown, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

The plane landed upside down and the plaintiff was suspended by the seat belt. The rescuers were unable to unfasten the seat belt and had to cut it to release the pilot. The engine of the plane caught on fire and the flames went along the fuel lines to the fuel header tank located under the cockpit. The insecticide was released from the fiberglass hopper in which it was carried. The fire extinguisher, which was attached to the frame of the plane, broke loose and could not be operated. The plaintiff was burned and covered with insecticide. He received both orthopedic and burn injuries with respiratory complications.

■ Applicable New Mexico law is controlling. The plaintiff claimed both strict liability and negligence in design, manufacture, assembly, and failure to provide a restraint system which would release the pilot after the crash. On strict liability New Mexico had adopted and applied Restatement, Second, Torts, § 402 A. *Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732, 734. See also *Moomey v. Massey Ferguson, Inc.*, 10 Cir., 429 F.2d 1184, 1186. Section 402 A imposes liability on the seller of a product "in a defective condition unreasonably dangerous to the user." We have held that both "defective condition" and "unreasonably dangerous" must be established. *Bruce v. Martin-Marietta Corp.*, 10 Cir., 544 F.2d 442, 447. Piper sold the plane about a year before the crash. No showing is made on non-compliance with federal air safety regulations. Proof of injuries in an airplane crash does not prove, or raise a presumption of, defective design. Id. at 448. The negligence claim is based on the failure to use ordinary care in the design, manufacture and sale of the product.

A distinction must be made between the crash and the crashworthiness of the plane to prevent enhancement of the injuries. Plaintiff says that the plane crashed because of the failure of the cutter to sever the static cable. He also says that his injuries were enhanced by the defective seat belt which would not unfasten, the fuel system which permitted the fire to spread, the bursting of the hopper which contained the insecticide, and failure of the support to the fire extinguisher which caused it to be inoperable.

Without objection by either party to the form of verdict, the jury returned a general verdict in favor of the plaintiff. We do not know whether the jury was so persuaded by one or all of the plaintiff's claims. The court denied the defendant's motion to dismiss on the ground of evidence insufficiency. In the circumstances, we must consider each claim.

■ Piper argues that it was entitled to a directed verdict on the issue of whether defective cutter blades proximately caused the crash. It says that plaintiff was required to, and did not, prove that an alternative safer design was available and should have been used. See *Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 577 P.2d 1322, 1327. Plaintiff counters with the argument that a prima facie case is made by showing a safety defect which failed to meet the reasonable expectations of an ordinary customer. See *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 451. New Mexico has not defined the elements for proof of strict liability for design defect and it is uncertain whether New Mexico would require proof that an alternative safer design was available in order to impose liability. Even if it be assumed that New Mexico would require a showing the cutter blades should have been capable of cutting the static cable and permitting the plane to keep on flying, the record satisfies that requirement.

An expert metallurgist testified for the plaintiff that cutter blades should have a hardness of 55–65 on the Rockwell scale of C and the blades on the crashed Piper had a hardness of only 20 on that scale. He said that the metal used by Piper was unacceptable as a cutter blade and could not cut the cable which had a hardness of 43 on the C scale. Upon contact the cutter blade would act as an impacting rather than cutting device. This testimony was consistent with that of other witnesses who said that the cable was broken and not cut. The metallurgist also testified to the availability of

other harder metals which would have cut through the cable. Pilots of crop spraying planes said that they had struck and severed wires, and continued to fly. Although no pilot testified to hitting a cable similar to that present in this crash, one pilot said that from his experience, which included contact with wires, he would expect a plane outfitted with cutter blades to fly through the cable. Through various experts, none of whom were agricultural pilots, Piper introduced contrary evidence.

In ruling on a defense motion for directed verdict, the court is required to make every reasonable inference from the plaintiff's evidence. See *Wylie v. Ford Motor Co.,* 10 Cir., 502 F.2d 1292, 1294. From the expert testimony on the softness of the Piper cutter blades and the testimony of the agricultural pilots it could be reasonably inferred that the plane would not have crashed had it been equipped with proper cutter blades.

■ Plaintiff's remaining claims go to the crashworthiness of the plane. To recover on this ground plaintiff must show that the claimed defect enhanced the injuries received from the original crash. *Fox v. Ford Motor Co.,* 10 Cir., 575 F.2d 774, 786–787. Defendant asserts that as to the crashworthy claims plaintiff did not prove alternative safer designs or enhanced injuries.

■ The first claim is based on an alleged defective seat belt. Plaintiff was wearing the seat belt when the plane crashed. When the plane overturned he was suspended upside down. Plaintiff testified that he tried unsuccessfully to undo the seat belt buckle. The rescuer said that he was familiar with seat belt buckles, including the type used on the crashed plane, that he was unable to release the buckle, and finally had to cut the strap with a knife.

An aeronautical expert testified that another type of buckle provided more leverage. This evidence plus that of the rescuer sufficed to justify a reasonable inference that the seat belt was defective. The record shows that plaintiff suffered extensive burns while he was trapped by the inoperative seat belt. The enhanced injuries which he received do not have to be quantified. The medical evidence of the extent of the burns was enough.

The next claim relates to the fiberglass hopper which contained the insecticide. An aeronautical expert for plaintiff testified that available neopreme and stainless steel tanks would remain intact after the crash. Plaintiff was covered with the released chemical, the toxic nature of which is not contested. Rescuers of plaintiff suffered nausea and breathing problems. The doctor who examined plaintiff when he was brought to the hospital testified to the respiratory problems of plaintiff. The evidence shows an alternative safer design and enhanced injuries and supports the denial of the motion for a directed verdict and the verdict of the jury.

The next claim relates to the fuel header tank which was positioned below the feet of the pilot when he was seated in the cockpit. This tank received gasoline from the wing tanks and fed it to the engine. Evidence showed that the fire began in the engine and spread along the fuel line to the header tank. A plaintiff's witness, who was an expert aeronautical engineer, testified that the design was faulty and that another design would have prevented the engine fire from spreading. Enhancement of injuries by severe burns was established. The evidence was sufficient to sustain the actions of both the court and the jury.

The first two arrivals at the accident scene were unable to extinguish the engine fire. The plane's fire extinguisher was held in place by two brackets, one of which broke in the crash, and the extinguisher was thrown loose from the plane. The bracket which broke was of much softer metal than the one which remained intact. The rescuers could not make the extinguisher work and the flames spread. An expert testified that the fire would not have spread if the bracket had not broken and rendered the extinguisher inoperative. The record sustains a finding of both faulty design and enhanced injury.

The court instructed the jury on res ipsa loquitur. After defining the phrase the court said: "The plaintiff relies upon this doctrine to prove that the claimed defective conditions of the product existed at the time the product was supplied to the defendant, and that the defective condition was the result of failure to use ordinary care." Plaintiff's claims were based on strict tort liability and negligence. The court had previously defined ordinary care. Res ipsa is available in a products case brought under a negligence theory. *Tafoya v. Las Cruces Coca-Cola Bottling Co.*, 59 N.M. 43, 278 P.2d 575, 578.

During the pendency of this appeal the New Mexico Supreme Court adopted a jury instruction which said that res ipsa was not applicable when liability is claimed solely on the basis of inadequate warning or design. Even if this instruction should be given retrospective effect, it is not proper in a case such as this where the plaintiff charges negligent manufacture and assembly as well as design flaws. The airplane was in the possession of Piper until sold about a year before the accident. No claim is made of any alteration or change in the plane. The instruction was applicable to the negligence claims and was proper.

Affirmed.