Grover Sterling **MARTIN** and Cleo Alean Martin, Plaintiffs-Appellants,

v.

**UNIT RIG & EQUIPMENT COMPANY, INC., Defendant-Appellee.**

No. 81–2207.

United States Court of Appeals, Tenth Circuit.

Aug. 25, 1983.

---

en by plaintiff and manufactured and sold by defendant.

The issue on appeal is whether, in light of the evidence adduced during the presentation of plaintiff's case, the district court erred in granting defendant's motion for a directed verdict. We hold that it did. We vacate the judgment and remand for a new trial.

## I.

### (1) Occurrence Of Accident

On the morning of April 24, 1980, plaintiff, an employee of the Phelps Dodge Corporation (Phelps Dodge), was driving a large Lectra-Haul truck (Truck No. 201) in the normal course of his work duties. The truck was designed specifically for the open pit mining industry. That morning, plaintiff was hauling waste ore material from a mine to a designated dump site in order to fill an old mine shaft. Plaintiff was an experienced driver, having driven this type of truck with a capacity of 170 tons continuously since they were first purchased from defendant by Phelps Dodge in 1978. The job required special skill and was replete with dangers. For example, at the dumpsite to which plaintiff had driven his truck on the day of the accident, all that separated the truck from a precipitous drop was a "berm", which was an elevated bank of ground approximately 18 inches high designed to keep the trucks from going over the brink into the dumpsite. To reduce the danger of trucks going into the dumpsite, the area leading up to the berm was slightly inclined, thus requiring a truck to back uphill in order to dump its load. Upon arrival at the dumpsite and before backing uphill to the berm, the truck turns in a clockwise direction, as plaintiff did on the day of the accident.

On that morning, plaintiff had made several trips from the mine to the dumpsite without mishap. On the fifth or sixth trip,

Bruce P. Moore, Sante Fe, N.M., for plaintiffs-appellants.

Kenneth J. Ferguson, of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for defendant-appellee.

Before HOLLOWAY, LOGAN, and TIMBERS,[*] Circuit Judges.

TIMBERS, Circuit Judge.

Plaintiffs Grover Sterling Martin and Cleo Alean Martin[1] appeal from a judgment entered in the District of New Mexico, Juan Burciaga, *District Judge,* granting the motion of defendant Unit Rig Equipment Company, Inc. for a directed verdict at the close of plaintiff's evidence during the jury trial of this diversity products liability action brought to recover damages for personal injuries claimed to have been sustained by plaintiff as the result of allegedly defective hoisting pins intended to secure in an upright position the bed of a truck driv-

---

[*] Of the Second Circuit, by designation.

[1.] Although both Mr. and Mrs. Martin were named as plaintiffs, for convenience throughout this opinion we shall refer to the singular plaintiff, Grover Martin, as "plaintiff", he being the driver of the truck involved and the one claimed to have been injured.

however, when he attempted to raise the bed of the truck preparatory to dumping, the bed of the truck did not move. He observed that the lefthand side of the truck was lower than its righthand side, apparently due to the soft surface before reaching the berm at the dumpsite. He then moved the truck forward approximately 30 feet until the level of the sides of the truck was equal. He checked his dumping system and ascertained that it was in working order. He then backed the truck again up to the berm and was ready to begin the dumping process.

According to plaintiff, he did not raise the bed of the truck before backing up to the berm. There was contrary evidence, however, that plaintiff either raised the bed of his truck at the time he checked his dumping system or that he subsequently backed up his truck with the bed partially raised. Defendant's counsel at trial referred on cross-examination of plaintiff to an internal Phelps Dodge report purportedly based on statements made by plaintiff to a mine foreman shortly after the accident which indicated that plaintiff backed up his truck with the bed raised 12 inches. Moreover, a report made by defendant regarding the accident indicated that plaintiff backed up his truck with the bed raised 18 inches. These conflicting versions of what preceded the accident, in view of our remand for a new trial, of course must be resolved by the jury. Their resolution is critical, for if plaintiff backed up the truck with the bed raised—contrary to instructions he is said to have received on the operation of the truck—that fact would have an important bearing on his right to recover under the New Mexico law of products liability. *Sky-*

*hook Corporation v. Jasper,* 90 N.M. 143, 560 P.2d 934 (1977).[2]

After backing up his truck to the berm, plaintiff began the actual dumping of the waste material. According to plaintiff, when the bed was raised approximately 3½ feet, the two hoisting pins which support the two hydraulic cylinders that raised the bed broke. The bed collapsed onto the frame of the truck, as a result of which plaintiff, who was in the cab of the truck at the time, sustained injuries. At the time of the accident, plaintiff was the only person present at the dumpsite, although other trucks had been participating in the dumping process that morning.

Aside from the deposition testimony of a treating physician, Dr. Barry King, plaintiff's case consisted of the testimony of two witnesses: Dr. Derek Swinson, an expert witness on physics, and plaintiff. We shall summarize their testimony briefly to the extent relevant to the issues on this appeal.

### (2) *Testimony of Dr. Swinson*

Although Dr. Swinson, a professor of physics at the University of New Mexico, did not make a metallurgical analysis of the pins in question[3] and was unfamiliar with the terrain where the accident occurred,[4] he had before him the following documents which provided the basis for his testimony: two Phelps Dodge accident reports involving other similar large trucks whose beds had collapsed; two accident reports concerning the instant accident—the Phelps Dodge report and defendant's report; a diagram of the hydraulic cylinder pin; replacement equipment records for the Phelps Dodge trucks whose beds had collapsed; defendant's operator's manual and mechanical

---

**2.** There was evidence that plaintiff had been instructed by the mine supervisor and by the individual who trained him on use of the truck not to back it up with the bed raised. According to an expert who testified at trial, greater force is exerted on the pins that support the bed when the bed is elevated at one foot than at a greater height, thus compounding the likelihood of a mechanical breakdown when the bed is slightly elevated while the truck is moving.

**3.** There was testimony at trial that Phelps Dodge discarded the truck's damaged parts. The transcript is unclear, however, as to whether the damaged hydraulic system alone was discarded or whether the pins as well were discarded.

**4.** The nature of the terrain at the dumpsite would have greater relevance if the truck bed were raised while plaintiff backed up. He has denied, however, that he operated the truck in that way.

manual for the 170 ton load truck; code of safety practice for heavy truck operations adopted by Phelps Dodge; minutes of a unit safety meeting held by Phelps Dodge; defendant's blueprints relating to the truck in question; and depositions of plaintiff and three other individuals.

Swinson testified that, based on his examination of the documents submitted to him, the most probable cause of the accident was that the pins were insufficiently strong to withstand the force imposed on them at the time of the accident. He identified two possible causes of the accident: either the hydraulic cylinders that raised the bed had failed or the pins that supported the hydraulic cylinders gave way. Of these two alternatives, he dismissed the former because only one of the hydraulic cylinders was replaced after the accident. He concluded that, whether the truck was stationary at the time of the accident or whether it was being backed up, the "major cause" of the accident was that the pins were insufficiently strong and therefore had been defectively *designed*.[5]

On cross-examination, counsel for defendant explored the implications of an alternative theory of the accident: that plaintiff had disregarded the standard instructions that the truck should not be driven with the bed raised and that plaintiff's failure to follow those instructions was the proximate cause of the accident. Swinson did not express an opinion as to whether plaintiff's or defendant's theory of the accident was the more likely. He testified that the pins could have failed under either theory.

Counsel for defendant sought to impeach Swinson's trial testimony on the basis of his prior deposition testimony. Swinson had been asked on his deposition whether he had formed an opinion as to whether it was more likely that the accident occurred as a result of the failure of the pins or the failure of the hydraulic system. He responded, "No, I don't." At trial, however, he sought to explain his apparently prior

inconsistent statement as follows: "Essentially, what I am saying there, that is, I cannot assign numerical probabilities to one or the other." In short, at trial Swinson adhered to his opinion that the most probable cause of the accident was the insufficiently strong pins.

### (3) *Testimony of Plaintiff*

In addition to plaintiff's testimony referred to above, he also testified to the following matters among others. He stated that he was aware of the caution against backing up the truck with the bed raised; but he denied that he had disregarded those instructions on the morning of the accident. He also testified that, although the truck he was driving that morning (Truck No. 201) was not his usual truck, he had driven it on several occasions, and, so far as he knew, it was in substantially the same condition as when originally received by Phelps Dodge.

On cross-examination, plaintiff denied that he had talked to the mine foreman who had prepared the Phelps Dodge report regarding the accident, including plaintiff's admission that he had backed up his truck with the bed raised. On re-direct, he stated that the foreman may have visited him once while he was recovering in the hospital. In support of his assertion that he had not stated previously that he had moved the truck with the bed raised, plaintiff testified that the truck's air brakes were set at the time of the accident. Plaintiff further testified that he previously had driven a truck whose bed collapsed one foot, but this had not caused any physical injuries.

### (4) *Granting Of Directed Verdict*

As stated above, at the close of plaintiff's evidence, defendant moved for a directed verdict on the ground that plaintiff had failed to prove a prima facie case of products liability. The court granted the motion on the ground that plaintiff had failed to present any evidence of causation. With respect to Swinson's expert testimony, the

---

**5.** Although he did not examine the pins, Swinson testified that, in his view, the pins had not

been defectively *manufactured*.

court curiously found that Swinson still adhered to his deposition testimony that he was unable to conclude what caused the accident, despite Swinson's trial testimony that the accident was caused by the insufficiently strong pins. The court also stated that, in its view, Swinson was merely speculating on possible causes of the accident "without facts or circumstances upon which he could properly rely."

From the judgment entered on the directed verdict, plaintiff has taken this appeal.

## II.

■ In this diversity action, of course New Mexico law governs so far as the substantive law of products liability is concerned. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938).

As to whether there was sufficient evidence to warrant submitting the case to the jury, however, our Court has held that federal law controls. *Sandoval v. U.S. Smelting, Refining & Mining Co.,* 544 F.2d 463 (10th Cir.1976); *Oldenburg v. Clark,* 489 F.2d 839, 841 (10th Cir.1974); *Diederich v. American News Co.,* 128 F.2d 144, 146 (10th Cir.1942).

We shall consider first the applicable federal procedural law before turning to New Mexico's substantive law of products liability.

In light of our summary of some of the evidence set forth above, it is abundantly clear that there were the sort of conflicts that normally are left to a jury to resolve under proper instructions from the court—but only if plaintiff had made out a prima facie case sufficient to survive a motion for a directed verdict. It is that issue to which we now turn, by examining the controlling law.

### (1) *Federal Procedural Law*

■ Fed.R.Civ. 50(a), which provides for a motion for a directed verdict, is intended to remove from the jury a case where there is either a "complete absence of proof of an issue or issues material to the cause of action" or where "there are no controverted

issues of fact upon which reasonable men could differ." 5A Moore's Federal Practice ¶ 50.02[1], at 50–20 (2d ed. 1982). To ensure that the court's exercise of discretion does not improperly invade the province of the jury, the court's discretion to grant a motion for directed verdict is limited in several respects. Most importantly, the court must view the evidence in the light most favorable to the non-moving party. *Wylie v. Ford Motor Company,* 502 F.2d 1292, 1294 (10th Cir.1974). Further, the opposing party must be given the "benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *New Mexico Savings & Loan Ass'n v. United States Fidelity and Guaranty Co.,* 454 F.2d 328, 331 (10th Cir. 1972). Moreover, the court is not permitted to consider the credibility of witnesses in reaching its decision, *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–80 (1943); Wright & Miller, Federal Practice and Procedure § 2527, at 560 (1971), nor may a court weigh the evidence or determine where the preponderance of the evidence lies. *Wylie v. Ford Motor Company, supra,* 502 F.2d at 1294. *See Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 700–01 (1962) (jury weighs contradictory evidence and inferences, draws ultimate conclusion as to facts).

In short, only where "the evidence points all one way", *Wylie v. Ford Motor Company, supra,* 502 F.2d at 1294, is a directed verdict appropriate. If there is conflicting evidence or insufficient evidence to warrant a one-way conclusion, a directed verdict is inappropriate. 5A Moore's Federal Practice ¶ 50.02[1], *supra,* at 50–25 to –27. Generally, we have indicated that directed verdicts "should be cautiously and sparingly granted." *Black, Silvalls & Bayson, Inc. v. Keystone Steel Fabricating, Inc.,* 584 F.2d 946, 951 (10th Cir.1978) (*quoting Wilkin v. Sunbeam Corp.,* 377 F.2d 344, 347 (10th Cir. 1967)).

We must determine, applying the federal procedural law referred to above, whether the district court in the instant case erred in granting defendant's motion for a direct-

ed verdict. *Smith v. Mill Creek Court, Inc.,* 457 F.2d 589, 591 (10th Cir.1972); *Kiner v. Northcutt,* 424 F.2d 222, 223 (10th Cir.1970). *But see* Wright & Miller, *supra,* § 2536, at 595. In the event that the court considered factors that are precluded under federal law, we must further consider whether, absent such error, plaintiff had presented sufficient evidence to constitute a prima facie case of products liability.

### (2) *New Mexico Substantive Law*

New Mexico has adopted the Restatement (Second) of Torts § 402A (1965) as the standard for products liability.[6] *Fabian v. E.W. Bliss Co.,* 582 F.2d 1257 (10th Cir.1978); *Skyhook v. Jasper,* 90 N.M. 143, 560 P.2d 943 (1977); *Garret v. Nissen Corp.,* 84 N.M. 16, 498 P.2d 1359 (1972); *Stang v. Hertz Corp.,* 83 N.M. 730, 497 P.2d 732 (1972). Under § 402A, a plaintiff "must prove that a defect in fact existed in the product, that a causal relationship existed between the injury suffered and the defective condition, and that there were no substantial changes in the condition after the product was sold." *Fabian v. E.W. Bliss Co., supra,* 582 F.2d at 1260. Causation may be established by circumstantial evidence. *Richards v. Upjohn Co.,* 95 N.M. 675, 625 P.2d 1192 (Ct.App.), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980); *Springer Corp. v. Dallas & Mavis Forwarding Co., Inc.,* 90 N.M. 58, 559 P.2d 846 (Ct.App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). In actions arising from design defects it is unclear whether New Mexico would require proof of an available alternative design in order to impose liability. *Meil v. Piper Aircraft Corp.,* 658 F.2d 787, 789 (10th Cir.1981).

In order to survive a motion for a directed verdict, plaintiff must have adduced probative evidence with respect to each of the three elements of products liability set forth above. Although the dis-

trict court grounded its decision on an asserted absence of evidence of causation, it is undisputed that plaintiff's injuries were caused by the collapse of the bed of the truck. The more difficult question is whether the truck was in a defective and unreasonably dangerous condition at the time of the accident.

Although plaintiff's evidence concerning the allegedly defective pins was not overwhelming, we believe that the evidence was sufficient, when measured against the federal standard set forth above, to have survived a motion for a directed verdict. There was evidence that the accident occurred during a routine unloading operation. Plaintiff testified that the accident occurred during the normal course of his use of the truck. This comports with § 402A, comment h. Although defendant sought to impeach this testimony by reference to the Phelps Dodge reports which included statements by plaintiff that he backed up his truck with the bed partially raised, any conflicting evidence on this point had to be resolved in favor of plaintiff, *New Mexico Savings & Loan Ass'n v. United States Fidelity and Guaranty Co., supra,* 454 F.2d at 328, and the court should not have weighed plaintiff's credibility on the "normal use" prong of the defective condition analysis for purposes of the directed verdict motion. *Brady, supra,* 320 U.S. at 479–80. One of the two Phelps Dodge reports concerned a similar accident apparently involving a stationary truck. Moreover, Dr. Swinson testified that in his opinion the truck bed fell because of the lack of strength of the pins. True, he did not make a metallurgical analysis of the pins, nor did he visit the site of the accident to determine what other forces might have acted upon the truck. He based his opinion on various documents relating to the accident and the design of the truck. The fact that Swinson did not make a metallurgical

---

**6.** In his amended complaint, plaintiff alleged two causes of action: strict products liability and negligence. Since plaintiff has challenged the district court's decision only with respect to his products liability cause of action, we shall not address the negligence cause of action. We note, however, that New Mexico follows the Restatement (Second) of Torts § 398 (1965) with respect to negligent design and manufacture of products. *Garrett v. Nissen Corp.,* 84 N.M. 16, 498 P.2d 1359 (1972).

analysis does not render his testimony incredible. *Anderson v. Hudspeth Pine, Inc.,* 299 F.2d 874 (10th Cir.1962). We have held that, where an expert witness testified that there was a defect, but did not make metallurgical tests nor examine the vehicle in question, his testimony should not be held incredible; such matters as the quality of the expert's investigation go to the weight to be given the expert's testimony. *Wylie v. Ford Motor Company, supra,* 502 F.2d at 1294–95.

Thus, viewing the evidence in the light most favorable to plaintiff and resolving conflicting evidence in his favor, we believe that plaintiff established a prima facie case on the issue of design defect. This is so in view of plaintiff's version of the accident, the testimony concerning a similar accident, Swinson's expert testimony, and the reasonable inferences that can be drawn from such evidence. The court's characterization of Swinson's in-court testimony as an affirmation of his prior deposition testimony is contrary to what Swinson actually testified to at trial. Moreover, the court's observation that Swinson was merely speculating on the cause of the accident was an effort to weigh the evidence—something a court is not permitted to do for purposes of a directed verdict motion. *Wylie v. Ford Motor Company, supra,* 502 F.2d at 1294.

Once a prima facie case on the issue of design defect had been shown to have been established, we think that the evidence showed that plaintiff also had established a prima facie case of an "unreasonably dangerous" defect. It was undisputed that the trucks carry heavy loads and that they have a number of safety features intended to ensure that the trucks will not plummet over the berm while unloading. Since the pins support the hydraulic cylinders while unloading takes place, it is evident that insufficiently strong pins will cause the very risk that they were intended to guard against, namely, the possibility of the truck bed collapsing on the frame of the truck.

Defendant claims that the instant case is indistinguishable from two other cases where plaintiffs relied solely on the fact of the occurrence of the accident to establish that there was an unreasonably dangerous defect. First, in *Skyhook Corporation v. Jasper,* 90 N.M. 143, 560 P.2d 934 (1977), where an individual was killed in the course of installing a signpost at a service station when a crane manufactured by Skyhook touched a high voltage line, the defendant Skyhook had placed a warning on the boom to indicate the position of the equipment within 10 feet of a high voltage line. *Id.* at 145, 560 P.2d at 936. There was undisputed evidence in *Skyhook* that the decedent had been warned against operating the crane too close to high voltage lines, that he was aware of such lines at this particular service station, and that the service station owner had warned the decedent and his co-worker to operate the crane at least 10 feet from the wires. Despite these warnings, decedent's co-worker swung the signpost toward the hole where it was to be placed, whereupon the lift cable contacted the overhead power line and fatally electrocuted the decedent. On this record, the New Mexico Supreme Court held that a directed verdict for the defendant was appropriate. *Id.* at 148, 560 P.2d at 939. The court observed that, if the co-workers had used the rig according to the procedure with which they had been instructed, the accident would not have occurred. *Id.* at 147, 560 P.2d at 938. Implicit in the court's decision was its view, consonant with the Restatement (Second) of Torts § 402A comment n, that assumption of risk is an affirmative defense in a products liability case, and that this defense was apposite in *Skyhook.* *See Trujillo v. Uniroyal Corp.,* 608 F.2d 815, 819 (10th Cir. 1979).

Although defendant in the instant case challenged plaintiff's version of how the accident occurred, urging an alternative theory that would comport with an assumption of risk defense, the instant record lacks undisputed evidence to support such a defense, contrary to the situation in *Skyhook.* Here, although plaintiff was the only person present at the scene of the accident, it was impermissible for purposes of a directed verdict motion to disregard his testimony as to how the accident occurred. Moreover, the court in *Skyhook,* finding that there were adequate safety features which should

have been heeded, held that the crane was "not in a defective condition nor unreasonably dangerous." *Skyhook, supra,* 90 N.M. 147, 560 P.2d at 938. By contrast, in the instant case the question was whether the pins failed during the course of *normal use.* For purposes of the directed verdict motion, we must assume that plaintiff followed the instructions he received as to routine operation of the large trucks. He so testified. This fact, coupled with Swinson's expert testimony as to the cause of the accident and the Phelps Dodge report of a similar accident, distinguishes the instant case from *Skyhook.*

The second case relied on by defendant, *Gates v. Ford Motor Company,* 494 F.2d 458 (10th Cir.1974), also is distinguishable. There, the decedent was fatally injured when a 24 year old farm tractor overturned while he was hauling logs off his land. No one else was present at the scene of the accident. The tractor had been used by third persons prior to its purchase by the decedent, unlike the case at bar where the truck had been used solely by Phelps Dodge from the time of its purchase new. Moreover, since Gates died as a result of his accident, there were no surviving witnesses as to how that accident occurred. In the instant case plaintiff did testify as to how the accident occurred. There was no evidence in *Gates* of similar accidents involving other Ford tractors. There apparently was no expert testimony in *Gates,* as there was in the instant case.

In view of the total absence of evidence supporting a theory of a defective product in *Gates,* other than the fact that an injury occurred, we stated that "injury, of itself, is not proof of a defect and raises no presumption of defectiveness." *Id.* at 459. Although in *Gates* we were applying the standards appropriate under Oklahoma law, New Mexico appears to follow the same analysis when injury stands alone as the only evidence in support of a defect theory. *Skyhook, supra,* 90 N.M. at 147, 590 P.2d at 938. More is needed to make out a prima facie case of a defect than the mere fact that the accident occurred. We hold that plaintiff in the instant case did adduce that additional quantum of proof, although hardly overwhelming, to establish a prima facie case on this element of his cause of action.

Having held that plaintiff established a prima facie case with respect to an unreasonably dangerous product, our inquiry with respect to causation is relatively straightforward. Swinson testified that the defective pins were the most probable cause of the accident. He acknowledged the possibility that the hydraulic system may have failed, but assigned a lower factor of probability to that theory. Although Swinson's in-court testimony was impeached, he did express an opinion on the cause of the accident. Swinson's testimony—together with plaintiff's testimony as to how the accident occurred and the evidence of another similar accident—we hold constituted sufficient evidence to establish a prima facie case on the issue of causation.

Defendant's reliance on *Springer Corp. v. Dallis & Mavis Forwarding Co.,* 90 N.M. 58, 559 P.2d 846 (Ct.App.1977), for the proposition that there was insufficient circumstantial evidence in the instant case is not persuasive. In *Springer,* the New Mexico Court of Appeals held that two alternative theories of why a new tire experienced a blow-out were not sufficiently rebutted by the plaintiff (who had the burden of proof, *State Farm Fire & Casualty Co. v. Miller Metal Co.,* 83 N.M. 516, 494 P.2d 178 (Ct. App.1971)). The court refused to hold that a third theory—that the new tire was defective—had been established by circumstantial evidence, stating that the plaintiff had failed to satisfy its burden " 'to make out the more probable hypothesis.' " *Springer, supra,* 90 N.M. at 59, 559 P.2d at 848 (*quoting Lopez v. Townsend,* 42 N.M. 601, 82 P.2d 921 (1938)). Such is not the situation in the instant case where, along with other evidence, there was expert testimony that the defective pins were the most probable cause of the accident. The alternative theory of the accident—that the hydraulic system failed—was rejected by Swinson because only one of the two hydraulic cylinders on the truck was damaged at the time of the accident. Therefore, the "more [that] was required," *Springer, supra,* 90 N.M. at 60, 559 P.2d at 848, was

present in the instant case to warrant the inference of a defect based on circumstantial evidence. *See Richards v. Upjohn Co.,* 95 N.M. 675, 625 P.2d 1192, 1195 (1980) (reasonable inferences from circumstances may be drawn in strict products liability case to establish causation).

With respect to the third element under § 402A to establish a prima facie products liability case, *Fabian v. E.W. Bliss Co., supra,* 582 F.2d at 1260, plaintiff testified that no substantial changes had been made in the truck since its delivery to Phelps Dodge. Although the truck involved in the accident was not plaintiff's regular truck, he had driven it on several occasions. That is sufficient.

As for an available alternative design, *Meil v. Piper Aircraft Corp., supra,* 658 F.2d at 789, Swinson testified that the pins could have been corrected simply by making them larger and altering the design of the truck to accommodate the larger pins. Although it is not clear whether New Mexico would require such proof to impose liability, *Meil, supra,* if it would, Swinson's testimony would satisfy that requirement.

We vacate the judgment and remand the action to the district court for a new trial.

VACATED AND REMANDED.