547 P.2d 1140

**John JASPER, as administrator of the Estate of and personal representative of Malvin Mack Brown, Deceased, Plaintiff-Appellant,**

v.

**SKYHOOK CORPORATION dba Baldwin Ward Manufacturing Company, Inc. Defendant-Appellee.**

**No. 2103.**

Court of Appeals of New Mexico.

Feb. 17, 1976.

Certiorari Issued March 24, 1976.

William H. Carpenter, Albuquerque, for plaintiff-appellant.

Peter J. Adang, Bruce D. Black, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for defendant-appellee.

## OPINION

SUTIN, Judge.

Plaintiff sued defendant for damages in a wrongful death action under a strict tort liability theory in which plaintiff claimed that defendant's sign erection crane was defective for failure to have a safety device installed. The trial court directed a verdict for defendant at the close of plaintiff's case. Judgment for defendant was entered and plaintiff appeals. We reverse.

A. *Facts Most Favorable to Plaintiff*

In January, 1968, defendant sold to Electrical Products Signs, Inc. (Electrical Products), a model 100 Skyhook sign erection crane that it had manufactured.

Defendant is the largest manufacturer of telescopic cranes in the industry. The crane was 100′ long, telescopic in nature, so it could be shot out 100′ above the ground. It was not equipped with a safety device such as an "insulated link" or a "proximity warning device".

An "insulated link" is a mechanism attached just above the hook on the crane which lifts heavy objects. Whenever danger exists from contact with voltage lines, the hoisting mechanism cannot transmit electric current through the "insulated link" to reach persons handling the objects being lifted. It protects men working with the hook or load from shock or burn.

Defendant had the "insulated link" available at the plant as an optional device. It never considered installing it on its crane. It never offered the crane to the public for sale with the optional safety device or with any modifications or equipment not included in the final product. The subject of the "insulated link" was not mentioned by defendant unless the customer requested that the safety link be provided.

The "proximity warning device" is a signal alarm device that creates a sound and a light when the boom or lift comes in proximity to highline wires. The defendant did not have this safety device available.

Most crane electrocutions happen when a boom hits on an overhead live wire. Just about every one of the crane boom shocks can be prevented with an "insulated link". There is always a hazard from operating cranes around highline wires, and this is a handicap of the business which uses the crane to install large signs near the voltage wires.

The decedent, Malvin Mack Brown, aged 21, worked as a helper for Electrical Products. He assisted in the installation of signs.

On the morning of January 11, 1973, at Springer, New Mexico, decedent and a

journeyman sign installer, on behalf of Electrical Products, were preparing to install a large Phillips 66 gasoline sign with the help of the crane purchased from defendant. Voltage lines were overhead. Decedent assisted the journeyman to position the truck. When it was positioned, the hook on the crane boom was attached to a wire which encircled a large pipe. The journeyman proceeded, by use of the crane, to carry the pipe over to a place where a hole had been dug.

The crane had a warning sign placed on it which required the equipment to be positioned "so that no part shall be capable of coming within 10 feet of high voltage lines."

The journeyman looked at the electric wires overhead. He judged that the load line and the rig were ten to twelve feet away from the lines while in use. He got on the rig, picked up the pipe with the hook, looked up to make sure he had plenty of room to avoid the voltage lines, made sure the pipe would not fall on decedent, and started raising it. He heard the decedent scream and he swung the rig out of the way. The lift cable had come into contact with the voltage lines and decedent, in contact with the pipe, was killed.

Plaintiff made out a prima facie case by introducing evidence which formed issues of fact for the jury. Defendant was, therefore, not entitled to judgment as a matter of law.

B. *Defendant was not entitled to judgment as a matter of law*

Guidelines for imposition of liability of manufacturers, and their defenses under Restatement, Torts 2d, § 402A, have been established in New Mexico. *First National Bk., Albuquerque v. Nor-Am Agr. Prod., Inc.,* 88 N.M. 74, 537 P.2d 682 (Ct.App. 1975); *Bendorf v. Volkswagenwerk Aktiengeselischaft,* 88 N.M. 355, 540 P.2d 835 (Ct.App.1975).

These guidelines were extended to manufacturers of products with optional safety devices in *Deem v. Woodbine Manufactur-*

*ing Company,* 88 N.M. 50, 546 P.2d 1207 (Ct.App.), decided February 3, 1976.

We are now confronted with a second optional safety device case.

### (1) *Plaintiff established a prima facie case.*

■ *Defendant owed decedent a duty.* This is a question of law for this Court to decide. We hold that defendant had a duty to design and manufacture a crane that was reasonably fit and safe for the purpose for which it was intended to be used. Defendant intended that its crane be used for lifting large objects which includes the installation of large signs in the area of voltage lines. It was being used for this purpose.

Plaintiff has presented a sufficient amount of evidence to make the following issues questions for the jury:

■ (a) *The crane was a defective product unreasonably dangerous to the user.* A defect in a product and a dangerous design of a product, absent a safety device, have the same meaning under Restatement of Torts 2d, §§ 402A and 398. *Deem,* supra. The crane was manufactured by defendant and sold to Electrical Products without a safety device. There is no question but that a crane without a safety device is dangerous to users in the area of voltage lines. However, whether the crane was defective in design and whether it was unreasonably dangerous to decedent are questions of fact for the jury. The evidence introduced was sufficient to create an issue of fact.

(b) *Defendant reasonably expected its crane to reach Electrical Products and its employees, the users.* This fact can be supported by the sale and purchase of the crane.

(c) *There was no substantial change in the condition in which it was sold.* This fact finds support in the evidence.

(d) *The defectively designed crane was the proximate cause of decedent's death.* Whether the absence of the safety device

was the proximate cause of decedent's death is a question of fact for the jury.

Plaintiff established a prima facie case. We intimate no opinion as to defendant's ultimate liability because its evidence has not been heard.

*(2) Defendant did not establish a legal defense as a matter of law.*

The burden of proof to establish a legal defense as a matter of law is on the defendant.

Defendant contends, (1) *that plaintiff is barred from recovery by the decedent's assumption of the risk.*

Assumption of the risk, as a valid defense, has been abolished in New Mexico. It is now called contributory negligence in the form of assumption of risk. *Bendorf*, supra. We find no evidence presented in plaintiff's case to support this defense as a matter of law. Decedent's contributory negligence in the form of assumption of risk is an issue of fact for the jury.

To be a valid defense as a matter of law, the undisputed evidence must show that decedent discovered the omission of the safety device on the crane; that he was aware of the danger involved, but, nevertheless, decedent made such an unreasonable use of the crane, that it proximately contributed to cause his death. The decedent must voluntarily and unreasonably proceed to encounter a known danger. *Bendorf*, supra.

There is no evidence that decedent knew or had reason to know, (1) that an electric current from the voltage lines would run down through the hook to the pipe with which he was in contact; (2) that an "insulated link" or warning system were safety factors essential to his safety; (3) that a contact between the boom and the electric wires would create danger for him; (4) that the voltage lines would be "live" or "dead"; (5) that he was aware of the warning sign on the crane; (6) that he made an unreasonable use of the crane which proximately contributed to his death; (7) that he voluntarily and unreasonably proceeded to encounter a known danger.

We wish to make it clear that conventional contributory negligence heretofore used as U.J.I. 13.1, is not a valid defense. The majority opinion in *Bendorf*, supra, states that we have removed conventional contributory negligence as a defense ". . . unless some future fact pattern should demonstrate a contrary necessity, . . . ." [540 P.2d at 838]. To permit this "unless" clause to remain, hereafter, every manufacturer of a product will claim that "a contrary necessity" exists in its case. The extensive authority cited in *Bendorf* has established an inflexible rule that conventional contributory negligence is not a defense when the doctrine of strict liability applies.

In safety device cases, justice dictates that where a manufacturer has a duty to install safety devices and breaches that duty, and the plaintiff is injured by the very eventuality that the safety devices were designed to guard against, contributory negligence as a defense is not available to the manufacturer. *Bexiga v. Havir Manufacturing Corp.*, 60 N.J. 402, 290 A.2d 281 (1972). The Court said:

> The only way to be certain that such devices will be installed on all machines—which clearly the public interest requires—is to place the duty on the manufacturer where it is feasible for him to do so. [290 A.2d at 285].

Defendant contends, (2) *that the manufacturer could not reasonably foresee the specific misuse of the crane in the accident.* "Whether a given misuse is foreseeable or unforeseeable is a question of fact for the jury in each case." *Bendorf*, supra [540 P.2d at 845, Sutin, J., specially concurring].

For specific misuse of a hoist, see *Turner v. Manning, Maxwell & Moore, Inc.*, 216 Va. 245, 217 S.E.2d 863 (1975). Here,

plaintiff's employer was using a "Budgit" portable half-ton capacity electric hoist, weighing 75 pounds. It was purchased *for the purpose of closing the doors in the bottom of a cupola,* a cylindrical structure lined with brick in which scrap metal is melted. Plaintiff was working in the cupola. The hoist was being used *to free frozen metal,* a weight, perhaps, beyond its capacity. The hoist became disengaged and fell and struck plaintiff on the head.

Uncontradicted expert testimony of a mechanical engineer established "that use of the hoist to dislodge frozen metal was misuse because the weight of the load was unknown and might exceed the capacity of the hoist, and the attachment of the lower hook to the load was insecure." [217 S.E. 2d at 867].

Plaintiff contended that the hoist was negligent in design because it was not equipped with an upper safety hook. The Court said:

> There was no evidence on which a jury could have relied to find that the hoist in this case was not reasonably safe for its intended use. Moreover, the evidence showed that there was no need for an upper safety hook if the product was used for its intended purpose. *It was the unforeseeable misuse of the hoist, not the absence of an upper safety hook, that caused the accident.* [Citation omitted] [217 S.E.2d at 868].

In the instant case, when plaintiff rested, there was no evidence presented to show that defendant could not reasonably foresee the specific misuse, if any, of the crane in lifting the pipe with the hook to place it where a hole had been dug.

■ In determining issues of contributory negligence in the form of assumption of risk, or the claim of misuse of the crane, defendant cannot rely on the expectation that Electrical Products, or decedent, would provide a safety device for the crane. This is not relevant. *Deem,* supra; *Bexiga,* supra.

## C. *Matters Which May Arise on a New Trial*

### (1) *Defendant's O.S.H.A. Regulations are inadmissible.*

■ O.S.H.A. stands for the federal Occupational Safety and Health Act of 1970 and the regulations promulgated thereunder.

Plaintiff submits that it was error for the court, over objection, to admit in evidence O.S.H.A. regulation 1910.180(j) entitled "Operating (cranes) near electric power lines". Occupational Safety and Health Standards, 37 Fed.Reg. 22102 (October 18, 1972), as amended at 38 Fed.Reg. 14373 (June 1, 1973); found in 39 Fed. Reg. 23705 (June 27, 1974).

Subsection (j) provides for, (1) clearances for cranes operating near power lines; (2) that *"insulating links, or proximity warning devices may be used on cranes"*; (3) that the owner of electric lines be notified; (4) that any overhead wire shall be considered to be an energized line unless otherwise indicated.

Relevant evidence is admissible. Irrelevant evidence is not. Section 20–4–402, N.M.S.A.1953 (Repl.Vol. 4, Supp.1975).

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Section 20–4–401.

Inferences may be drawn by a jury from subsection (j) ·that Electrical Products and decedent are burdened with installing safety devices on a crane and notifying the owner of electric lines of the work being performed. These benefits are not available to a manufacturer under special liability law.

O.S.H.A. regulations are not relevant. They are inadmissible in evidence.

### D. *Plaintiff's standards and government codes were inadmissible*

Plaintiff sought admission in evidence of, (1) a circular of the Department of the Army on "Use of Cranes . . . Near Electric Power Lines", an addendum to Army regulations circulated to all Army commands for governing operation of equipment at the Army commands; (2) a circular published under authority of the Secretary of the Air Force on "Electrocution Protective Devices for Cranes and Crane Shovels". These exhibits have no bearing on the duty of a manufacturer to install a safety device on its crane. They are not relevant. They refer to safety of cranes with a safety device during operation near electric power lines. They are as inadmissible as defendant's O.S.H.A. regulations.

Plaintiff was denied the right to question a witness about the Tennessee Code rules and regulations about an "insulated link". Such questioning was not relevant.

Defendant does not contest the fact that an "insulated link" is a safety device. The above matters tend to emphasize the fact of safety when it is not an issue in the case. Defendant could very well ask of plaintiff, "Why didn't Electrical Products or decedent install a safety device?"

### E. *Defendant's cross-appeal is without merit*

Defendant cross-appealed on the ground that the trial court erred in granting summary judgment. It is without merit.

The judgment is reversed. Plaintiff is granted a new trial.

IT IS SO ORDERED.

LOPEZ, J., concur.

HERNANDEZ, J., dissenting.

HERNANDEZ, Judge (dissenting).

The majority opinion extends the rule of Restatement of Torts 2d, § 402A, which makes the manufacture of defective products unreasonably dangerous to the user, and makes it applicable to optional safety devices. I do not believe this view has been adopted by the Supreme Court of New Mexico. For this reason, I respectfully dissent.