670 P.2d 113

Ada R. MARCHESE and Diego Peter Marchese, as Co-Personal Representatives of the Estate of Luciano Anthony Marchese, Deceased, Plaintiffs-Appellants,

v.

WARNER COMMUNICATIONS, INC., Malibu Grand Prix Corporation, a subsidiary of Warner Communications, Inc., Defendants-Appellees.

No. 5806.

Court of Appeals of New Mexico.

June 23, 1983.

Certiorari Denied Sept. 15, 1983.

Patricia Ortiz, Charles G. Berry, Michael E. Vigil, Marchiondo & Berry, P.A., Albuquerque, for plaintiffs-appellants.

Ranne B. Miller, Alan Konrad, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendants-appellees.

OPINION

HENDLEY, Judge.

Plaintiff sued to recover damages for the death of their child, Luciano. The jury determined the total amount of plaintiff's damage was $4,334.76, with fault attributed 47.5% to Luciano; 47.5% to a non-party (Cousin Joanne Marchese); and 5% to Malibu Grand Prix. Defendant Bowman's motion for a directed verdict had been granted at the end of plaintiff's case. Plaintiff appeals from the judgment and from the order denying the motion for judgment notwithstanding the verdict, or for a new trial.

FACTS

Luciano Marchese was killed in an accident at Malibu Grand Prix racetrack. His death occurred while he was driving the wrong way on Malibu's track. He was involved in a head-on collision with defendant Steve Bowman.

Decedent, age 14, had asked for his mother's permission to drive on the track, but she refused. Luciano filled out two liability release forms stating that his age was 15. He signed the parental consent portion of one form. Joanne Marchese, his twenty-year old cousin, signed the parental consent portion of the other form. She also led an employee of Malibu, over the telephone, to believe that she was Luciano's mother and that he had her consent to drive on the track. Luciano also presented his motor scooter license which showed he was fourteen years of age.

With regard to the accident, there was testimony that Luciano spun off the track onto the dirt; he was pushed back onto the track by an attendant; Luciano started the wrong way; the attendant took the steering wheel and started Luciano in the right direction. During this time, Bowman, who was driving a car behind Luciano and had been stopped when Luciano spun out, was allowed to proceed. Bowman did not start immediately. Shortly thereafter, Bowman saw Luciano traveling in the wrong direction toward him and it appeared Luciano's car was out of control. Luciano was

killed when Bowman's car went up over his car.

Plaintiff's first six issues deal with Instruction No. 2 (theory of the case) which was given by the trial court. It states:

Plaintiffs claim that their minor son, Lucian [sic] Marchese, sustained injuries and was killed while using a Virage Formula Racecar on a Malibu Grand Prix racetrack.

Plaintiffs claim that one or more of the following acts or omissions constitutes a failure by the defendants to use the ordinary care required of a supplier of a product and that this failure was a proximate cause of the death of Plaintiffs' minor son.

1. The Defendants entrusted their race car to Plaintiffs' minor son when they knew or should have known that he did not have sufficient skill to operate it safely.

2. The Defendants rented a race car to Plaintiffs' minor son without parental consent as required by law.

3. The Defendants failed to maintain their vehicles and the track in such a manner as to avoid the accident which occurred to Plaintiffs' minor son.

Plaintiffs also claim that the Defendants, Warner Communications, Inc., and Grand Prix Corporation are subject to products liability for an unreasonable risk of injury resulting from a condition of the product or a manner in which it was used, and that this risk was a proximate cause of the injuries sustained by Plaintiffs' minor son. Whereas the claim of failure to use ordinary care is based upon acts or omissions of the suppliers, products liability is based upon the following claimed defects in the product:

1. The race car supplied to Plaintiffs' minor son was in a defective condition.

2. The track did not have adequate warning devices to prevent drivers from traveling in the wrong direction.

3. The track and/or the race car did not have adequate warning devices to control the race cars on the track in the case of emergency.

4. The Defendants failed to warn Plaintiffs' minor son of the risk of injury involved in the use of the race track [sic] and the race car.

Plaintiffs also claim that a proximate cause of the injuries to their minor son was Defendants' breach of warranty in that the race car and racetrack supplied by the Defendants to Plaintiffs' minor son was impliedly warranted to be fit and proper and safe for the purpose for which it was intended, when in fact said vehicle and said racetrack were unsafe for the purpose for which they were intended.

Plaintiffs have the burden of proving that any one of their claims of failure to use ordinary care, or products liability, or breach of warranty, was a proximate cause of the injuries suffered by their minor son.

Defendants deny Plaintiffs' claims and raise the defenses of contributory negligence, assumption of risk and misuse of the product.

Defendants have the burden of proving the following essential elements of their defenses.

Upon the defense of contributory negligence, the Defendants must prove (a) that Lucian [sic] Marchese was contributorily [sic] negligent; and (b) that Lucian [sic] Marchese's contributory negligence was a proximate cause of the injuries sustained by Lucian [sic] Marchese. The Defendants contend that Lucian [sic] Marchese was contributorily [sic] negligent in one or more of the following ways:

1. Lucian [sic] Marchese made false representations to Malibu Grand Prix employees in order to drive on the Malibu Grand Prix track.

2. Lucian [sic] Marchese drove his car in the wrong direction on the track.

3. Lucian [sic] Marchese failed to maintain control of his vehicle.

4. Lucian [sic] Marchese failed to keep a proper look-out [sic] while driving the vehicle.

Any one contention, if proved, establishes the contributory negligence of Lucian [sic] Marchese.

Defendants also contend that Lucian [sic] Marchese assumed the risk of his injury because he drove the Malibu Grand Prix car on the track when he knew or should have known that he was intentionally or unreasonably exposing himself to a known danger.

Defendants further contend that the manner in which Lucian [sic] Marchese operated the Malibu car constitutes a misuse of the product as elsewhere defined in these instructions.

Defendants have the burden of proving the affirmative defenses.

If you find that Plaintiffs have sustained damages and they have proven one or more of the claimed acts of negligence, products liability or breach of warranty was the proximate cause thereof and Defendants have failed to prove any of their affirmative defenses, then your verdict should be for Plaintiffs.

If you find that Plaintiffs have not proved any of their claims, then your verdict should be for Defendants.

If, on the other hand, you find that Plaintiffs have proved one or more of their required claims and Defendants have also proved one or more of their affirmative defenses, you will answer the Special Verdict form submitted to you with these instructions.

*Point I.*

Plaintiff contends that the making of false representations to gain entry to the track could not be the proximate cause of the accident. We disagree.

■ Plaintiff argues that, as a matter of law, the misrepresentations could not have been the proximate cause. There was sufficient evidence to submit this theory of causation to the jury. In light of the evidence, causation could not be decided as a matter of law. *See Armstrong v. Indus. Elec. and Equip. Service,* 97 N.M. 272, 639 P.2d 81 (Ct.App.1981).

*Point II.*

Plaintiff contends that Instruction No. 2 is wrong in that it stated that contributory negligence was a defense to products liability claims. Plaintiff relies on *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981), for this proposition. However, *Scott v. Rizzo, supra,* did not state that. It states:

With respect to the suggestion that we should also consider the effect of the comparative negligence doctrine upon strict liability claims, we need not decide that point at this time. We do make some observations, however, relying upon the capability of the trial judge to resolve such issues when confronted with a special factual situation requiring adaptation of the rule of comparative negligence: (1) Plaintiff's "conventional" contributory negligence has been held to be inapplicable as an affirmative defense in strict liability cases. *Jasper v. Skyhook Corp.,* 89 N.M. 98, 547 P.2d 1140 (Ct.App.1976), *rev'd* on other grounds, 90 N.M. 143, 560 P.2d 934 (1977). Nevertheless, New Mexico does not equate "strict" liability with "absolute" liability; plaintiff's conduct is still a material, although limited, issue. (2) Under the view that the comparative negligence doctrine delineates a *comparative causation* analysis, some courts logically have extended the application of the rule to strict liability design cases, reasoning that the consideration of the jury, under proper instructions, should be focused upon the part played by plaintiff's "misconduct" (rather than his "negligence") which contributed to the injury suffered by use of defendant's defective product. The "misconduct" phrase would embrace such defenses as assumption of risk, misuse or abnormal use of the product, or the "negligence" concept of voluntarily and unreasonably proceeding to encounter a known danger. Such an extension does not clash with these defenses previously allowed to be raised in this jurisdiction, *see, e.g., Rudisaile v. Hawk Aviation Inc.,* 92 N.M. 575, 592 P.2d 175 (1979), in strict liability actions. They simply would not be a complete bar to

recovery. *Bendorf v. Volkswagenwerk Aktiengeselischaft,* 88 N.M. 355, 540 P.2d 835 (1975).

Further, the phrase "contributory negligence" does not carry the connotation of a complete bar to recovery, nor was it used in *Scott v. Rizzo, supra,* to denote a complete bar. To the contrary, as explained in footnote 1 of *Scott, supra,* it was used in the sense as nothing more than a partial bar to the extent of plaintiff's negligence.

In the instant case, the jury was not misled into viewing contributory negligence as a total bar to recovery. The special interrogatories answered by the jury show this. Fault was apportioned. The Special Verdict form used and answered is as follows:

We, the jury, answer the following questions:

Question No. 1: Did Luciano Marchese act negligently, misuse the car or track or assume the risk of the accident? .

Yes ___X___ No _____.

Question No. 2: If your answer to Question No. 1 is "yes," was that conduct a proximate cause of the accident?

Yes ___X___ No _____

Question No. 3: Was Joanne Marchese, the cousin, negligent?

Yes ___X___ No _____

Question No. 4: If your answer to Question No. 3 is "yes," was that conduct a proximate cause of the accident?

Yes ___X___ No _____

Question No. 5: Was Malibu Grand Prix negligent or did it supply a defective product?

Yes ___X___ No _____

Question No. 6: If your answer to Question No. 5 is "yes," was that conduct a proximate cause of the accident?

Yes ___X___ No _____

Question No. 7: If your answer to Question No. 6 is "yes," is Warner Communications liable for the conduct of Malibu Grand Prix?

Yes ___X___ No _____

Question No. 8: Taking the combined conduct that caused the accident as 100%, what percentage is attributable to:

| | | | |
|---|---|---|---|
| a. | Luciano Marchese | 47.5 | % |
| b. | Joanne Marchese | 47.5 | % |
| c. | Malibu Grand Prix | 5 | % |

Question No. 9: What is the total amount of damages sustained by plaintiffs as a result of the accident?

____$4,334.76____

/s/ Jane Harrison____
FOREPERSON

■ We agree with footnote 1 in *Scott v. Rizzo, supra;* we hold that plaintiff's negligence is a partial defense to a products liability claim in that the percentage of plaintiff's fault, due to negligence, reduces the amount of damages that plaintiff may recover. Those cases to the contrary need not be considered since they are pre-*Scott v. Rizzo, supra. See generally,* C.R. Heft and C.J. Heft, *Comparative Negligence Manual,* ch. 1 (1978); and V. Schwartz, *Comparative Negligence,* ch. 12 (1974).

*Point III.*

Plaintiff argues here that there is no evidence of assumption of the risk and, further, Instruction No. 23 is an incorrect statement of the law and, also, unduly emphasized the conduct of Luciano.

When a user of a product discovers the risk of harm caused by the condition of the product or a manner in which it is used, and when he understands the danger but, nevertheless, intentionally and unreasonably exposes himself to it, the user is said to have assumed the risk.

Plaintiffs' minor son had a duty to use ordinary care for his own safety. Ordinary care is that care exercised by the reasonably prudent person and varies with the nature of what is being done. As the danger that should reasonably be foreseen increases, the amount of care required also increases.

This instruction is NMSA 1978, UJI Civ. 14.27 (Cum.Supp.1982), without the introductory phrase to the second paragraph, which is included in the approved instruction. Even if we considered the instruction to be an incorrect statement of the law and that it unduly emphasized Luciano's conduct, we could not hold that the instruction was wrong. *Collins v. Michelbach,* 92 N.M.

366, 588 P.2d 1041 (1979). Accordingly, we do not consider this part of plaintiff's point.

■ The evidence bearing on Luciano's conduct was sufficient to present the issue of assumption of the risk. That evidence is set forth under the FACTS heading. It was properly a question for the jury.

Plaintiff also contends that the instruction, as given, is incorrect because the second paragraph of the above-quoted instruction was not limited to the negligence claim. *See* Directions for Use to UJI Civ. 14.27. The answer is that, under our comparative negligence system, the limitation does not apply. See our holding under Point II.

*Point IV.*

■ Plaintiff argues there is no evidence to support the defense of misuse of the product. The trial court instructed: "The supplier has the duty to consider foreseeable risks of injury. *This duty is limited to use of the product for a purpose or in a manner which could reasonably be foreseen.*" (Emphasis added.)

Under the facts (misrepresentations to gain admittance; driving the wrong way when the berms were marked showing it was a one-way track), it was proper to submit the issue to the jury as to whether the accident was reasonably foreseeable. *See C & H Const. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 597 P.2d 1190 (Ct.App. 1979).

*Point V.*

■ Plaintiff argues that there was no evidence that Luciano failed to keep a proper lookout. Plaintiff had originally requested these instructions as they related to Bowman. After Bowman was granted a directed verdict, plaintiff requested that the instructions be withdrawn.

This argument is totally without merit. The evidence was sufficient to support the giving of the instructions. There were photographs of markings which indicated the proper direction of travel on the track. There were other exhibits and testimony indicating the directional markings. The question was properly before the jury. *C &*

*H Const. & Paving Co. v. Citizens Bank, supra.*

*Point VI.*

Plaintiff argues that there is a lack of evidence to support a portion of Instruction No. 2 pertaining to contributory negligence. Plaintiff argues that, unless Luciano knew he was traveling the wrong direction, he could not be contributorially negligent on that basis.

■ In stating that Luciano had to know he was driving in the wrong direction in order to show contributory negligence, plaintiff cites no case law, or anything else for that matter, to support this legal conclusion. We agree with defendants that the proper legal theory is that he knew or should have known, as a reasonably prudent 14-year-old, that he was going the wrong direction. *See* NMSA 1978, UJI Civ. 16.1, 16.2, 16.3 (Repl.Pamp.1980), and Committee Comments thereto.

*Point VII.*

Plaintiff argues that it was error to allow an apportionment of fault to Joanne Marchese, that it was error to admit evidence that she signed a parental consent form for Luciano, and that it was error to admit the consent form into evidence.

■ Plaintiff's subpoint A is that Joanne Marchese should not have been included on the Special Verdict form because no other instruction told how to evaluate her conduct. This is incorrect. The Special Verdict form dealt with her negligence and whether it was the proximate cause. Other instructions defined negligence and proximate cause. Reading the instructions together, they were sufficient. *Tapia v. Panhandle Steel Erectors Company,* 78 N.M. 86, 428 P.2d 625 (1967). Further, if other instructions were necessary, plaintiff fails to mention what they were.

Plaintiff's subpoint B totally ignores *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App. 1982), as it relates to the absent or ghost defendant. This subpoint is frivolous.

■ Since the jury was required under *Bartlett, supra,* to apportion fault, evidence bearing on Joanne Marchese's fault was relevant. Subpoint C is also frivolous.

Subpoint D, regarding Joanne Marchese's conversation being hearsay, is also frivolous. No reason or citation is given in support of plaintiff's contention. The trial court expressly relied upon NMSA 1978, Evid.R. 804(b)(6) and 803(24), and we do not disagree.

*Point VIII.*

Plaintiff contends that Question No. 9 of the Special Verdict form is erroneous and that the verdict was inadequate as a matter of law.

Question No. 9 states: "What is the total amount of damages sustained by plaintiffs as a result of the accident?" Plaintiff contends "[t]he jury obviously did not consider the economic value of Lucian [sic] Marchese's life in determining their verdict," and the question directed the jurors' attention away from the economic value of the child's life. The verdict was for the exact amount of the funeral bill.

■ When plaintiff submitted its own form of special verdict to the trial court, it acknowledged it was an erroneous statement of the law. Failure to adopt plaintiff's form of special verdict could not be the foundation upon which to predicate error. Further, plaintiff did not point out the vice, if any, of the trial court's special verdict. *See Williams v. Vandenhoven,* 82 N.M. 352, 482 P.2d 55 (1971).

As to the adequacy of the jury verdict, the trial court adopted plaintiff's requested Instruction No. 27, which stated:

If you find for the plaintiff on the issue of liability, you must decide the amount of damages which would compensate for:

1. The reasonable expenses of funeral and burial; and

2. The monetary worth of the life of decedent had it continued[.]

In fixing damages, you should consider:

A. The monetary loss, or lack of it, to the family[;]

B. The age, earning capacity, health, habits and probable duration of life of the decedent;

C. The monetary value of the personal services of the decedent to the family; and

D. The aggravating or mitigating circumstances attending the conduct which results in death.

The weight to be given to the evidence upon such issues is for you to determine. It is your responsibility to award such damages as may be fair and just to both sides under all the circumstances of this case.

In fixing damages, deductions must be made from gross earnings or earning capacity, if any, for income taxes, social security taxes, other taxes and personal living expenses of the decedent.

Damages for future loss of money will be paid in a lump sum, and a reasonable discount should be made for the future earning power of such lump sum.

You may not consider:

1. The loss of decedent's society to the family;

2. The grief or sorrow of the family; or

3. The property or wealth of the survivors or the defendant.

Your verdict must be based on evidence, not upon speculation, guess or conjecture. You must not permit the amount of damages to be influenced by sympathy or prejudice.

Plaintiff argues here that "[t]he fact that the jury found damages only in the amount of the funeral bills indicates that the jury did not heed the instructions given in Instruction No. 27. Further, the amount is so insufficient that it indicates passion, prejudice, bias or sympathy on the part of the jury."

Plaintiff argues that as a matter of law the verdict was insufficient. Plaintiff basically relies on three cases, *Baca v. Baca,* 81 N.M. 734, 472 P.2d 997 (Ct.App.1970); *Stang v. Hertz Corporation,* 81 N.M. 69, 463 P.2d 45 (Ct.App.1969) (*Stang I*); and, *Stang v. Hertz Corporation,* 81 N.M. 348,

467 P.2d 14 (1970) (*Stang II*). Plaintiff contends that these cases stand for the proposition that one cannot find a life valueless in New Mexico. We disagree. *Stang I, supra,* holds that a jury could find that the life of a nun who had taken an oath of poverty and who could leave no estate might be worth more than nominal damages. There is nothing in *Stang I, supra,* nor in the Wrongful Death Act to support plaintiff's position. NMSA 1978, § 41–2–3 (Repl.Pamp.1982), states in part: "[T]he jury in every such action *may* give such damages, compensatory and exemplary, *as they shall deem fair and just, taking into consideration * * * *"* (Emphasis added.)

In *Stang I, supra,* this Court stated, "Damages for the wrongful death *may* be recovered by proof of the present worth of life of decedent to the decedent's estate." (Emphasis added.) In *Stang II, supra,* the Supreme Court adopted this explanation.

Similarly, in *Baca, supra,* this Court stated:

In the absence of pecuniary injury, the jury *may* still award such damages, compensatory and exemplary, as they shall deem fair and just, having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default which results in the death. (Emphasis added.)

 \*   \*   \*   \*   \*   \*

\* \* \* There is no fixed standard for measuring the value of a life, and, as in personal injury cases, wide latitude is allowed for the exercise of the judgment of the jury in fixing the amount of such an award.

■ The wrongful death statute and the cases cited by plaintiff stand for the proposition that the amount of damages is a correct one for the jury to decide. Viewing the evidence and inferences that flow therefrom in the light most favorable to support the verdict, the award was proper. *Strickland v. Roosevelt Cty. Rural Elec.,* 99 N.M. 335, 657 P.2d 1184 (Ct.App.1982).

*Points IX and X.*

Defendants filed a motion to strike plaintiff's "Statement of Proceedings and Points VII, VIII, IX, and X" of the brief in chief for the reason that they "fail to comply in any sense with the applicable appellate rules." This motion was held in abeyance pending submission of the case for decision.

Throughout the brief in chief, plaintiff has disregarded the cardinal rule for deciding appeals, which states: "On appeal, all disputed facts are resolved in favor of the successful party, all reasonable inferences indulged in support of the verdict, all evidence and inferences to the contrary disregarded, and the evidence viewed in the aspect most favorable to the verdict." *Tapia v. Panhandle Steel Erectors Company, supra.*

We deal here solely with Points IX and X, and deny the remainder of defendants' motion. Point IX A is a laundry list of the evidentiary rulings by the trial court "which are challenged by the Marcheses as abuses of discretion." Point IX B is another list of rulings by the trial court which plaintiff claims show the court's prejudicial attitude toward plaintiff. Point IX C states the combined effect of A and B "is cumulative prejudice to the Marcheses." The cumulative error proposition which is claimed is not reversible error.

■ Because of the plaintiff's failure to set forth *all* the evidence most favorable to the verdict and because they fail to cite the instances complained of within the context of the proceeding, we will not review Point IX. A further reason is the failure to cite any of the New Mexico cases on the point.

Point X is basically the same as Point IX, except that it deals with instructions. Any consideration of this point would have the same problem as in Point IX—we would have to search the entire record.

The motion to strike Points IX and X is granted. The defendants are awarded appellate costs.

Affirmed.

IT IS SO ORDERED.

WOOD, J., concurs.

BIVINS, J., concurs in part; dissents in part.

BIVINS, Judge (concurring in part; dissenting in part).

I concur with the majority except as to Point II.

After correctly identifying the issue under Point II, the majority proceeds to decide that defenses to strict liability claims should no longer bar recovery, but instead should proportionately reduce recovery as in comparative negligence cases. While I agree with that approach, I do not believe we can reach the issue here. Plaintiff's argument is simple and straight-forward: "The instruction [No. 2] informs the jury that conventional contributory negligence is a defense to products liability." While contributory negligence, now applied comparatively, was a proper defense to plaintiff's claims of negligence, clearly it was not a proper defense to the claim based on strict liability. *Jasper v. Skyhook Corporation,* 89 N.M. 98, 547 P.2d 1140 (Ct.App.1976). I read *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981), as limiting the defense of negligence with respect to strict liability cases to "the 'negligence' concept of voluntarily and unreasonably proceeding to encounter a known danger." *Id.* at 688, 634 P.2d 1234. This type of "negligence" simply provides a restatement of the assumption of the risk defense. The factual bases for the comparative negligence defense in this case, as set forth in instruction No. 2 do not fall within this concept. The instruction fails to state that the comparative negligence defense could only apply to the plaintiff's first claim based on negligence; as a result, the instruction is defective. The trial court should have informed the jury that they cannot consider plaintiff's comparative negligence as a defense to the products liability claim.

Plaintiff made a proper objection and tendered an instruction which might have cured the problem. It stated: "You are instructed that the defense of contributory negligence does not apply to the 'products liability claim.'" The trial court refused that tendered instruction.

NMSA 1978, UJI Civ. 14.1(I) (Repl.Pamp. 1980) provides in part:

If you find that the plaintiff has proved what is required of him on any one of his claims [and that none of defendant's defenses *to that claim* has been proved], then you will determine plaintiff's damages and return a verdict for that amount. (Emphasis added).

Contrary to that subparagraph Instruction No. 2 states:

If you find that Plaintiffs have sustained damages and they have proven one or more of the claimed acts of negligence, products liability or breach of warranty was the proximate cause thereof and Defendants have failed to prove *any of their affirmative defenses,* then your verdict should be for Plaintiffs.

If you find that Plaintiffs have not proved any of their claims, then your verdict should be for Defendants.

If, on the other hand, you find that Plaintiffs have proved one or more of their required claims and Defendants have also proved *one or more of their affirmative defenses,* you will answer the Special Verdict form submitted to you with these instructions. (Emphasis added).

Comparing the two provisions, it is easy to see that UJI 14.1 was not followed; there is no way to tie any of the defendants' affirmative defenses to a particular claim. Plaintiffs allege three separate and distinct causes of action: negligence, strict liability and breach of warranty. Defendants asserted three separate and distinct affirmative defenses: comparative negligence, assumption of the risk and misuse of the product. These defenses should have been linked to the respective cause of actions to which they apply. Comparative negligence is a defense only to the negligence claim; assumption of the risk and misuse of the product are defenses only to the strict liability claim.

The last paragraph of the instruction refers the jury to the Special Verdict form which provides:

We, the jury, answer the following questions:

Question No. 1: Did Luciano Marchese act negligently, misuse the car or track or assume the risk of the accident?

Yes ___X___      No _____

Question No. 2: If your answer to Question No. 1 is "yes," was that conduct a proximate cause of the accident?

Yes ___X___      No _____

From the way the instruction is worded, the jury could have found for plaintiff on strict liability but reduced based on conventional comparative negligence. This would be contrary to law. In addition, the instruction would also have made it possible for the jury to find for plaintiff on the claim of breach of warranty but reduce based on conventional comparative negligence.

The Directions For Use to UJI 14.1 state that it is to be given in lieu of UJI 3.2; nevertheless the following from UJI 3.2 is equally applicable to UJI 14.1:

This is the most important single instruction in the lawsuit and the court and counsel should give particular attention to its finalization.

\*        \*        \* ·       \*        \*        \*

Since this instruction is the post to which all of the remaining instructions are tied, extreme care and caution must be exercised when any departure is made from it.

While not relevant to any issue presented, it should be noted interstitially that under instruction No. 2, the strict liability claim includes alleged defects with regard to the race track. Strict products liability applies to chattels; not realty. The proper form for plaintiff's action for these claims is in negligence.

Because of the defect in instruction No. 2, I would reverse and remand for new trial.